UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                :

JANART 55 WEST 8TH L.L.C.,           :

                Plaintiff,          :        06 Civ. 14293 (CSH)

                -against-             :        **MEMORANDUM OPINION**
                                 :        **AND ORDER**
GREENWICH INSURANCE COMPANY, :

                Defendant.       :
-----------------------------------------------------------X

Haight, Senior District Judge:

        In this action, Plaintiff Janart 55 West 8th LLC ("Janart") sues for declaratory relief, breach of contract, and unjust enrichment arising out of the allegedly wrongful denial by Defendant Greenwich Insurance Company ("Greenwich") of insurance coverage under a property insurance policy Greenwich issued to Janart. Janart commenced its action in Supreme Court, New York County. Greenwich removed the case to this Court on the ground of diversity of citizenship.[1]

        Following discovery, Greenwich moves pursuant to Rule 56, Fed. R. Civ. P., for summary judgment declaring non-coverage under the policy and dismissing Janart's complaint. Greenwich includes in its motion, as alternative forms of relief, an order precluding the opinion testimony of Janart's expert witness, and an order directing further document discovery.

        Janart opposes Greenwich's motion in its entirety. While Janart has not filed a cross-motion for summary judgment, it asks that the Court "enter judgment *sua sponte* in favor of Janart for the

---

[1] Diversity jurisdiction is present because the only beneficial owner of Janart is a citizen of New York, and Greenwich is a Delaware corporation with its principal place of business in Connecticut.

1

coverage to which it is entitled," Brief at 3, a practice sanctioned by the Second Circuit, *see, e.g., First Financial Insurance Company v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999) ("as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."). That requirement is satisfied in the case at bar. The Court treats Janart's request as the practical equivalent of a cross-motion for a summary declaration of coverage under the policy in suit.

## I. STANDARD OF REVIEW

Rule 56 © of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment "if the pleadings, discovery and disclosure materials on file, or any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could [have] return[ed] a verdict for the [appellant]." *Miner v. Clinton County,* 541 F.3d 464, 471 (2d Cir. 2008) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.2d 184, 2202 (2d Cir. 2007)). In the case at bar, the governing law is that of New York. "[U]nless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *Id*. (quoting *McCarthy*).

## II. FACTUAL BACKGROUND

The following facts are undisputed.

At the pertinent times, Janart owned a commercial and residential building located at 55 West 8th Street in Manhattan ("55 West 8th" or "the Property"). Commercial tenants occupied the ground

floor. Residential rental apartments comprised the upper floors,

The quiet enjoyment of Apartment 2 by its tenant, Carol Wilson, was disturbed when, in the early morning hours of January 12, 2006, she noticed liquid mercury dripping into her apartment through a hole in the ceiling. Wilson dialed 911. The New York City Fire Department ("FDNY") responded and examined the mercury spill in Apartment 2. Because mercury is a toxic and hazardous substance, the FDNY notified the City of New York Department of Environmental Protection, Bureau of Environmental Compliance, Division of Emergency Response & Technical Assessment ("DERTA"). DERTA sent two Hazardous Materials Specialists to the Property. FDNY HazMat personnel captured and bagged about 15 pounds of mercury that had fallen into Apartment 2 from the ceiling. Apartment 4 was directly above Apartment 2. The FDNY searched Apartment 4, all the Property's other apartments, and its roof, but could not determine the source of the mercury spill. The City authorities directed that the Property be vacated by all tenants until the mercury-created hazardous condition was cleaned up.

Janart retained cleanup and renovation contractors to restore the Property. Several weeks later, during that process, a glass ampule with significant mercury readings was found buried among the floor joists of apartment 4, that is to say, in a space between Apartment 4's floor and Apartment 2's ceiling. From the 1940s through the late 1960s, before Janart purchased the Property, Apartment 4 had been the office of a dentist. In those days, dentists used mercury to fashion fillings for their patients' teeth.[2] Janart contends that the most likely cause of the mercury leak into Apartment 2 was the long-departed dentist's action, while conduction his practice, of storing mercury in the space between the two apartments. The record contains considerable fact and expert evidence to support

---

[2] Dentists no longer follow that practice.

that theory, although Greenwich dismisses it as speculation. But the present motions do not turn upon the question of the offending mercury's source, and in the view I take of the case I need not consider it further.

Eventually the Property was cleaned up and renovated. The tenants, including Carol Wilson, moved back in.

Greenwich had issued a commercial property insurance policy to Janart which covered 55 West 8th, among other buildings. Janart asserted a claim under the policy for reimbursement of its cleanup and renovation expenses resulting from the mercury spill. Greenwich denied coverage, relying upon certain exclusions in the policy. This action followed.

### III. THE POLICY PROVISIONS

The action presents this core question: Does the policy Greenwich issued to Janart cover the loss Janart suffered? One must begin by looking at the relevant terms of the policy, but that is easier said than done. Typical of its genre, the insurance policy in this case consists of many pages of single-spaced, densely worded language concerning coverage, to which declarations, schedules, riders and exclusions are appended, like ornaments on a Christmas tree, although without their charm. To answer the question of coverage *vel non* for a particular loss, the relevant policy provisions must first be identified and then studied, for their own meaning and for their relation to other provisions. In post-9/11 intelligence parlance, it is a matter of connecting the dots.

The first dot is found in the Location Schedule of insured properties, incorporated by reference in the Declarations at the beginning of the policy. 55 West 8th is Location #10, Building

#1 on that schedule. JAN 000011.[3] The schedule describes the "Coverage" as "REAL PROPERTY" and "RENTAL VALUE," and assigns "Values" of $2,000,000 and $400,000 respectively. A column captioned "Covered Cause of Loss" states with respect to each of the two coverages: "Special – including Flood & Quake." *Id.*

The next pertinent dot is found in the "Building and Personal Property Coverage Form" in the policy, JAN 000021-JAN 000033.[4] Under the caption "A. Coverage," the policy provides:

> We will pay for direct physical loss or damage to Covered Property
> at the premises described in the Declarations caused by or resulting
> from and Covered Cause of Loss.

JAN 000021. Under a caption reading "Covered Causes of Loss," the policy reads: "See applicable Causes of Loss Form as shown in the Declarations." I have already quoted that language; it is contained in the first dot. But the policy also includes a "Cause of Loss – Special Form," JAN 000042- JAN 000048, which provides in part:

> **A. Covered Causes of Loss**
>
> > When Special is shown in the Declarations, Covered Causes of
> > Loss means Risks of Direct Physical Loss unless the loss is:
> >
> > 1. Excluded in Section B, Exclusions, or
> > 2. Limited in Section C, Limitations; that follow.

JAN 000042. As noted *supra*, the Declarations and Schedule covering 55 West 8th include the word "Special," so this provision applies to the parties' rights and obligations under the policy.

Section B of this form, captioned "Exclusions," provides in part:

---

[3] This and succeeding page references are to the Bates numbered pages of the full policy, Ex. A to the declaration of Jennifer L. Markowitz, the Property's manager.

[4] Only 13 of the 14 pages of that form are included in the exhibit. The omission does not appear to be material.

> 2. We will not pay for loss or damage caused or resulting from any of the following: . . .
>
>> 1. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape it itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."
>> This Exclusion, 1., does not apply to damage to glass caused by chemicals applied to the glass.

JAN 000044. The reader whose eyes this prose has not glazed over will observe that two terms are in quotation marks: "pollutants" and "specified cause of loss." The definition of "pollutants" appears in the Business Income (Without Extra Expense) Coverage Form, JAN 000034-JAN 000041, at section F.4., which provides:

> "Pollutants" means any solid, liquid or gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and wastes. Waste includes materials to be recycled, reconditioned or reclaimed.

JAN 000041. The definition of "specified causes of loss" appears in the Cause of Loss-Special Form section F.:

> "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

JAN 000048.[5]

---

[5] This section goes on to further define "sinkhole collapse," "falling objects," and "water damage," which are not relevant to the case at bar.

The last policy provisions the parties cite in their briefs appear in Endorsement No. 2, JAN 000067, which is captioned "Pollution and Contamination Exclusion" (hereinafter "the Pollution Exclusion Clause"). The Pollution Exclusion Clause reads in its entirety:

> This policy does not cover loss or damage to property caused directly or indirectly by the release or discharge or dispersal of toxic or hazardous substances, contaminants or pollutants. Nor will we cover the cost of removal, disposal, decontamination or replacement of insured property which has been contaminated by toxic or hazardous substances, contaminants or pollutants and which by law or civil authority must be restored, disposed of or contaminated. Such loss to property covered is excluded regardless of any other cause or event that contributes concurrently or in any other sequence to the loss. If loss otherwise covered by this policy occurs and the cost of removal of debris is increased due to the presence of toxic or hazardous substances, contaminants, or pollutants, this policy will only be liable for the cost of debris removal which would have been incurred had no toxic or hazardous substances, contaminants or pollutants been present in, on or about the covered property to be removed.

## IV. DISCUSSION

### A.  Coverage

Janart contends, and Greenwich does not dispute, that the policy in suit is an "all-risk" policy, under which "losses caused by *any* fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). Stated somewhat differently, under an all-risk policy "recovery is allowed for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding loss from coverage." *Id*. (internal quotation marks and citation omitted). An all-risk policy may be

ontrasted with a "named perils" policy, which "covers only losses suffered from an enumerated peril." *Id.* (internal quotation marks and citation omitted).

Once the insured under an all-risk policy demonstrates that a covered property has suffered a loss, "the onus is on the insurance company to show that the loss claimed is expressly excluded from coverage under the terms of the policy." *20 East 35 Owners Corp. v. Great American Insurance* Co., No. 95 Civ. 2642 (KTD), 1996 WL 438172 (S.D.N.Y. Aug. 5, 1996), at *3 (citation omitted). And the insurer's burden of proof on the issue is demanding:

> It is not sufficient for the all-risk insurer's case for them to offer a reasonable interpretation under which the loss is excluded; they must demonstrate that an interpretation favoring them is the only reasonable reading of at least one of the relevant terms of exclusion.

*Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 1000 (2d Cir. 1974). More recently, the Second Circuit said:

> Moreover, to negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that could fairly be placed thereon.

*Parks Real Estate*, 472 F.3d at 42 (internal quotation marks and citation to New York cases omitted).

In the case at bar, Greenwich places sole reliance upon the Pollution Exclusion Clause contained in the policy's Endorsement No. 2, JAN 000067, that being the last provision quoted in Part III, *supra*. While Section B.2. of the Cause of Loss – Special Form, captioned "Exclusions," also contains language in subsection 1. excluding coverage for damage caused by "pollutants" under certain circumstances but not under others, Greenwich contends that the Pollution Exclusion Clause in Endorsement No. 2

> negates the limited coverage afforded under the "Causes of Loss – Special Form", indicating that, regardless of how the pollution came about, there is no coverage under the policy. . . .
>
> Defendant maintains that the endorsement supercedes the policy form, such that the absolute exclusion for pollution would bar coverage for this loss, regardless of the cause of the pollution.

Main Brief at 6-7.[6]

Greenwich, relying exclusively upon the Pollution Exclusion Clause to avoid coverage under this all-risks policy, contends that the exclusion bars Janart's claim with such clarity that Greenwich is entitled to summary judgment declaring non-coverage. Janart contends on its cross-motion that under the governing law it is so clear that the exclusion does not bar its claim under the policy that it is entitled to summary judgment declaring coverage. They are both wrong.

Greenwich is not entitled to a summary declaration that the Pollution Exclusion Clause negates coverage for damage caused by the offending mercury's pollution within the building's confined indoor spaces because, under Second Circuit case law, "it is appropriate to construe the standard pollution exclusion clause in light of its general purpose, which is to exclude coverage for *environmental* pollution." (emphasis added). *Stoney Run Co. v. Prudential-LMI Commercial Insurance Co.*, 47 F.3d 34, 37 (2d Cir. 1995). The Second Circuit's decision in *Stoney Run* discerned that general purpose for pollution exclusion clauses from its review of New York cases, beginning with *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640 (N.Y. Ct.App.

---

[6] Greenwich's contention in this regard is intended, *inter alia*, to counter one of Janart's contentions, namely, that the dentist who conducted his practice in Apartment 4 committed an act of vandalism by storing mercury in the space beneath the floor, "vandalism" being a covered cause of loss under Section F of the policy's Cause of Loss – Special Form. The briefs of counsel briskly debate whether such conduct by the Apartment 4 dentist would constitute "vandalism" as that term is used in the policy, but in the view I take of the case, I need not resolve the question.

1993), where the New York Court of Appeals said that the ambiguity of a pollution exclusion clause "is further revealed by examining the purpose of the clause, meant to exclude coverage for environmental pollution,"*id.* at 654 (citation omitted). The Court based that observation upon the fact that "[a] pollution exclusion was required in all liability policies from 1971 through 1982 to 'assure that corporate polluters bear the full burden of their own actions spoiling the environment.'" *Id.* at 652 (citing and quoting the New York statute).[7] The Second Circuit continued in *Stoney Run*: "Subsequent decisions of New York courts have also construed pollution exclusion clauses as applying only to environmental pollution." 47 F.3d at 37 (citing cases).

If the Pollution Exclusion Clause in the policy in suit applies only to environmental pollution, Greenwich is obligated to pay under the policy, since the mercury leaking into Apartment 2 at 55 West 8th Street from the ceiling cannot be characterized as "environmental" in nature. Given the genesis and provenance of pollution exclusion clauses, as explicated by the New York courts, I hold, as did the Second Circuit in *Stoney Run*, that the clause is ambiguous as applied to the facts of the case. *Stoney Run* presented the question whether the pollution exclusion clause, "a standard industry clause used in commercial liability policies," 47 F.3d at 36, negated the insurer's obligation to defend and/or indemnify the insured property owner in civil actions for damages due to carbon monoxide poisoning within the covered apartment buildings. After reviewing New York appellate authority, the Second Circuit concluded:

---

[7] As a footnote to history, the *Continental Casualty* court went on to say of the New York statute quoted in text: "Though the provision remains in use, since 1982 it has not been mandated because no payments were being made on such liabilities. Corporate polluters who could not insure themselves simply went out of business when the liability arose." (citation omitted). That exercise in corporate bad citizenship does not alter the fact that pollution exclusion clauses were fashioned by the New York legislature to negate coverage for environmental pollution alone.

> We need not decide the precise scope of the pollution exclusion clause contained in plaintiffs' policies. Instead, we need only determine whether the clause is ambiguous as applied to this case and subject to no other reasonable interpretation than the one advanced by Prudential. As noted above, the pollution exclusion clause can be reasonably interpreted as applying only to environmental pollution. A reasonable policyholder might not characterize the escape of carbon monoxide from a faulty residential heating and ventilation system as environmental pollution. Accordingly, we find the pollution exclusion clause ambiguous as applied to the Gruner and Schomer actions.

47 F.3d at 39. Similarly, in the case at bar a reasonable policyholder might not characterize the escape of mercury from an enclosed space between residential apartments as environmental pollution.

Seeking to avoid the thrust of this authority, Greenwich contends that the language in this policy's Pollution Exclusion Clause is different from those in the cited cases; and that those cases, for the most part, involved liability policies rather than a direct damage policy like this one. Neither contention is persuasive.

First, this policy's Pollution Exclusion Clause is cast in language redolent of boilerplate. Greenwich points to no material differences between the Clause's wording and that of pollution exclusion clauses which the courts in the cited cases held applied only to environmental pollution, or, as in *Stoney Run*, were ambiguous on the point. Indeed, certain phrases in the Clause at bar point toward the more narrow environmental exclusion. The Clause begins with the sentence: "This policy does not cover loss or damage caused directly or indirectly by the release or *discharge* or *dispersal* of toxic or hazardous substances, contaminants or pollutants." (emphasis added). In *Stoney Run*, the Second Circuit quoted the New York Court of Appeals' statement in *Continental Casualty* that

11

"terms such as 'discharge' and 'dispersal' were terms of art of *environmental law* used in reference to injuries caused by 'disposal or containment of hazardous waste.'" 47 F.3d at 37 (emphasis added)

Second, in construing pollution exclusion clauses there is no principled distinction between liability and direct damage policies. Both are contracts covering loss, whose exclusion clauses are intended to negate that coverage. A prominent insurance executive has said recently: "Insurance is defined as coverage by contract in which one party agrees to indemnify or reimburse another for loss."[8] Liability policies indemnify; policies like the one at bar reimburse. If they are all-risk policies, the same rules of interpretation apply to clauses drafted by insurers to negate coverage for loss resulting from a specified cause. Court decisions construing exclusion clauses in liability policies are instructive in construing such clauses in reimbursement policies, and *vice-versa*. *Parks Real Estate*, 472 F.3d 33, is illustrative. In that case the Second Circuit, construing a contamination exclusion clause in an all-risk commercial property insurance policy for building damage, relied upon New York cases construing liability policies: "In the context of a liability policy, at least one New York State court has also found the term 'contamination' or 'contaminant' to be ambiguous." 472 F.3d at 47 (citation omitted).[9]

---

[8] The quotation is from an Op-Ed article by Tom Wilson, the chief executive of Allstate, appearing in *The New York Times* dated April 16, 2009, which argued for greater governmental regulation of the insurance industry.

[9] The Second Circuit, reversing the district court, held that the exclusion clause in *Parks Real Estate* was ambiguous:

> Under an all-risk policy, almost any unintended damage to a building or its contents could be considered contamination within these broad definitions of the term. Under such a construction, the all-risk policy would insure against virtually nothing. Accordingly, we find that the term "contamination" is ambiguous in the context of the all-risk policy that we are considering.

For these reasons, Greenwich's motion for a summary declaration of non-coverage based on the Pollution Exclusion Clause will be denied. However, Janart's cross-motion for a summary declaration of coverage under the policy also fails.

Greenwich's briefs connect certain dots in the basic policy form to support its contention that the Pollution Exclusion clause is not limited to environmental pollution. Specifically, Greenwich points out that under the basic policy, "specified causes of loss" are the only causes of loss leading to coverage for damage resulting from "discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" "Specified causes of loss" include "leakage from fire extinguishing equipment." Greenwich relies upon these provisions to contend that "the pollution exclusion in the basic policy form was not limited to 'broadly dispersed environmental pollution' or 'industrial and environmental pollution.'" Reply Brief at 4.

There is a certain irony in Greenwich's reliance upon provisions in the basic policy form, since its central argument is that Endorsement No. 2, the Pollution Exclusion Clause, supersedes all the pollution provisions in the basic policy. Nonetheless, the intent of the parties must be gleaned from the policy as a whole; and the basic policy's reference to "leakage from fire extinguishing equipment," which does not readily invoke images of environmental pollution, together with some of the broad exclusionary language in the Clause itself, compel the conclusion that there are sufficient ambiguities in the policy concerning coverage of the mercury-caused damage to 55 West 8th to preclude a summary disposition in favor of Janart.

---

472 F.3d at 47-48. The *Parks Real Estate* court also noted the well-established rule: "Since it is ambiguous, the exclusion must be construed in favor of the insured." *Id.* at 47. That principle applies to the case at bar.

The briefs of counsel raise other issues and make additional arguments, but I need not reach them.

**B.     Other Issues**

Greenwich includes in its motion applications for an order precluding at trial the opinion testimony of Janart's expert witness on the source of the mercury pollution, and an order allowing further discovery in certain areas (the deadline for pretrial discovery having elapsed). These applications are premature and I do not consider them. They may be renewed before the Court prior to trial.

### V. CONCLUSION

For the foregoing reasons, Greenwich's motion for a summary declaration of non-coverage under the policy in suit is DENIED.

Construing Janart's brief as a cross-motion for a summary declaration of coverage under the policy, its motion is DENIED.

The Court reaches no other issues. The case will go forward in accordance with further orders of the Court.

It is SO ORDERED.

New York, New York
May 6, 2009

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE